**UNITED STATES of America, Appellee,**

v.

**Donald Ratliff CADY, Appellant.**

**No. 73–1344.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 13, 1973.

Decided April 19, 1974.

Robert C. Dopf, Williams, Hart, Lavorato & Kirtley, West Des Moines, Iowa, for appellant.

Allen L. Donielson, U. S. Atty., Des Moines, Iowa, for appellee.

Before MEHAFFY, Chief Judge, MOORE,* Senior Circuit Judge, and WEBSTER, Circuit Judge.

WEBSTER, Circuit Judge.

Appellant Donald Ratliff Cady was convicted of aiding and abetting a bank robbery aggravated by putting in jeopardy the life of another person by use of a dangerous weapon or device, in violation of 18 U.S.C. § 2113(d) and 18 U.S. C. § 2. In this appeal he challenges the sufficiency of the evidence. He further contends that the court erred (1) in failing to instruct on the weight to be given the testimony of an accomplice; (2) in giving an erroneous instruction on "putting in jeopardy" and (3) in refusing to give a lesser included offense instruction

on the crime of larceny of a bank, 18 U. S.C. § 2113(b). Finally he contends that the remarks of government counsel in final argument constituted prejudicial error.

On May 16, 1972 the East Des Moines National Bank branch at Pleasant Hill, Iowa, was robbed of $16,295. Two robbers entered the bank. One seized a customer and held a gun at her neck. The other robber pointed a gun at the branch manager. The robbers, later identified as Philip Carnes and Thomas Ellsworth Small, fled the bank and were observed making their getaway in an orange Chevelle with a black top.

At the trial Small and Robert Daniel Smith both testified that they conspired with Carnes and appellant Cady to rob the bank. Smith testified that Cady's role was to obtain a car to be used in the robbery. He also testified that Cady knew the Pleasant Hill branch was the target bank. Cady delivered the car to Smith's house on the morning of the robbery, and, according to Smith, wiped off the door handles of the car. Carnes and Small left in the Chevelle; Smith followed in his Cadillac.

After the robbery Smith, Small and Carnes met and divided the loot. Smith testified that Carnes handed him $1,500, stating "Here's fifteen hundred for Cady". Small testified that the agreement had been to pay Cady $1,000 for providing the car. Smith testified that he called Cady, met him at a tavern and drove back to Smith's house, where Cady was given the $1,500.

Carnes testified for the defense, corroborating the details of the actual robbery, but exculpating Cady from any knowing participation. He testified that he told Cady that he needed to borrow a car for a few days to get around to see friends to borrow money; that he never at any time discussed robbing a bank with the defendant. He testified that arrangements to borrow the car were made over the telephone, and that Smith and another person actually

* LEONARD P. MOORE, Senior Circuit Judge, Second Circuit, sitting by designation.

picked up the automobile. He testified that none of the money went to Cady. Carnes, a prison escapee, testified that he only told Cady that he was out on appeal.

Two guns were used in the robbery. Small testified that the gun used by Carnes was loaded while his was not, and that as far as he knew, both guns were supplied by Cady. Carnes testified that at least one gun was loaded, but testified that Smith supplied one gun and he the other. Smith testified that he overheard a conversation between Carnes and Cady in which Carnes asked Cady whether he, Cady, had obtained the gun from a museum because, he Carnes, could get no shells for it.

Cady did not take the stand. With the conflicting testimony of the participants, the circumstances surrounding the furnishing of the car by Cady take on crucial importance. Gary Steward, a used car salesman for M & W Motors, testified that he first met Cady about May 1, 1972, when Cady visited his lot in search of a car. He came in several more times. On May 15 Steward told Cady about his brother's Chevelle, which had been placed on the lot for sale, but was on loan on that particular day. Cady told him he would want a car the next day. Steward testified as follows on direct examination:

> Q Did he [Cady] discuss anything about what the car was going to be used for?
>
> A Well, he didn't come right straight out and tell me that he was going to rob a bank with the car.
>
> Q What did he say?
>
> A Well, he said something to the effect that he said he knew where there was a fellow that hauled some money back and forth in the trunk of his car to the grocery store.
>
> Q And what did he say about that hauling that money back and forth?
>
> A Well, I was under the impression that he was going—

> MR. LAVORATO: I object to this impression.
>
> THE COURT: Sustained.
>
> Q What was the specific things that he said other than just hauling the money back and forth to the store?
>
> A Well, I don't know. He didn't come right straight out and tell me that he was going to rob anybody.
>
> Q Where did he say the bank—the money, was coming from that was going to go to the store?
>
> A I believe he said he, the fellow, was picking the money up at a bank and hauling it to a grocery store, to open the business, and he hauled the money in the trunk of his car.

Cady told Steward he wanted the car for a couple of hours and might even buy the car. Steward called Mike Bach, the lendee, to say that a fellow was coming to pick up the car. He then gave Cady the address where the car was located. Mrs. Bach could not identify Cady in the courtroom as the man who picked up the car.

### SUFFICIENCY OF THE EVIDENCE

██ On the evidence adduced at the trial the court properly rejected Cady's motions for a directed verdict. While the evidence was conflicting, there was ample evidence from which, if believed, the jury could find that Cady knowingly and intentionally aided and abetted a bank robbery of a federally insured bank, an offense aggravated by placing in jeopardy the lives of one or more persons by means of two guns, at least one of which was loaded. The weight and credibility of the testimony was for the jury. Appellant concedes that a conviction can rest upon uncorroborated testimony of an accomplice if it is not otherwise incredible or unsubstantial on its face. United States v. Cole, 449 F.2d 194, 197 (8th Cir. 1971), cert. denied sub nom. Woodard v. United States, 405 U.S. 931, 92 S.Ct. 987, 30 L. Ed.2d 806 (1972). The testimony of gov-

ernment witnesses was consistent. Prior inconsistent statements were placed before the jury; the jury obviously accorded weight and credibility to their in-trial testimony. In any event, corroboration can be found in the testimony of the car salesman, to whom Cady clearly implied a sinister purpose and disclosed a time requirement consistent with the bank robbery plan.

## ACCOMPLICE INSTRUCTION

 Appellant contends that it was plain error not to instruct the jury that under the law Smith and Small were accomplices and hence their particular testimony should be received with caution and weighed with great care.[1] Instruction No. 9 fully and accurately instructed the jury on the weight to be given to the testimony of an accomplice.[2] Appellant contends, however, that since Instruction No. 12 dealing with the essential elements of the offense named only Small and Carnes, and did not name Smith, it was possible for a jury to conclude that Smith was not an accomplice. This contention is without merit. Small and Carnes were mentioned only in connection with their roles in supplying the necessary elements of the offense of bank robbery; Instruction No. 9 could not mislead the jury, and any fair application of it to the facts in this case would include Smith as an accomplice.

1. In this Circuit an accomplice instruction is not required unless requested in proper form, absent plain error appearing in the record. Barnes v. United States, 347 F.2d 925, 928 (8th Cir. 1965); Annot., 17 A.L.R. Fed. 249, at § 23 (1973). Cf. United States v. Jackson, 477 F.2d 879 (8th Cir. 1973). Cady's attorney neither requested an instruction nor objected to the instruction as given.

2. *Instruction No. 9*
An accomplice is one who unites with another person in the commission of a crime, voluntarily and with common intent. An accomplice does not become incompetent as a witness because of participation in the crime charged. On the contrary, the testimony of an accomplice alone, if believed by the jury, may be of sufficient weight to sustain a verdict of guilty, even

## PUTTING IN JEOPARDY INSTRUCTION

██ Appellant was charged and convicted under 18 U.S.C. § 2113(d), the aggravated "assault" provision.[3] In instructing the jury on the additional elements necessary to constitute the aggravated offense, the court defined "dangerous weapon or device" and to "put in jeopardy the life" as follows:

### Instruction No. 16

A 'dangerous weapon or device' includes anything capable of being readily operated, manipulated, wielded, or otherwise used by one or more persons to inflict severe bodily harm or injury upon another person. So, an operable firearm, such as a pistol, revolver, or other 'gun', capable of firing a bullet or other 'ammunition', may be found to be a dangerous weapon or device.

To 'put in jeopardy the life' of a person by the use of a dangerous weapon or device means, then, to expose such person to a risk of death, or to the fear of death, by the use of such dangerous weapon or device.

Appellant contends that, although not objected to, this instruction constituted "plain error" under Fed.R.Crim.P. 52(b) because it failed to instruct the jury that the robber must have had the *objective capability* of causing physical harm by the means threatened. The Second

though not corroborated or supported by other evidence. However, the jury should keep in mind that such testimony is always to be received with caution and weighed with great care.
You should never convict a defendant upon the unsupported testimony of an alleged accomplice, unless you believe that unsupported testimony beyond a reasonable doubt.

3. 18 U.S.C. § 2113(d):
(d) Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

Circuit has adopted this construction of subsection (d), holding that unless a finding was required that lives were objectively in danger, as distinguished from mere fear of injury, subsection (d) would have no different meaning from subsection (a),[4] which prohibits robbery "by force and violence, or by intimidation." United States v. Marshall, 427 F.2d 434 (2d Cir. 1970). This court reached a similar conclusion in Bradley v. United States, 447 F.2d 264 (8th Cir. 1971), vacated, 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972), which involved the use of a simulated bomb.[5] For a contrary result, see United States v. Beasley, 438 F.2d 1279 (6th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 124, 30 L.Ed.2d 110 (1971).

The Fifth Circuit has held that in the highly charged atmosphere of a bank robbery by robbers bearing guns, persons present are placed "in jeopardy" as a matter of law. Baker v. United States, 412 F.2d 1069, 1071–72 (5th Cir. 1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970). It has been held that it is not necessary to show that a weapon is loaded to permit finding that life had been placed in jeopardy, United States v. Shelton, 465 F.2d 361 (4th Cir. 1972); that when a firearm is drawn as though to be used, the test is met, United States v. Marchbanks, 469 F.2d 72 (5th Cir. 1972); and that when a gun is visible and it backs the robber's demands, the jury may find that the life of the person so accosted is "in jeopardy", United States v. Roustio, 455 F.2d 366 (7th Cir. 1972). See also United States v. Thomas, 455 F.2d 320 (6th Cir. 1972), where it was held that

the government had no burden of showing that the guns so used were operable and loaded.

While we are free to consider anew the appropriate rule for this circuit,[6] we need not do so here because the evidence was undisputed that at least one of the guns used in the robbery was loaded. Cf. United States v. Marchbanks, supra. Smith testified that he was with Carnes when Carnes acquired shells for the .38 revolver which Carnes later pointed at the bank customer's head. Small testified that the gun was loaded. Carnes, a defense witness, testified only that the gun used by Small was not loaded. It is reasonable to infer that if Carnes' gun was not in fact loaded, and hence arguably objectively incapable of causing harm, the defense would have elicited such testimony from its own witness.[7]

> Direct evidence [that a gun is loaded] is unnecessary. 'When * * * a robber displays a gun to back up his demands, he wants the victim to believe that it is loaded, and the factfinder may fairly infer that it was.' Wagner v. United States, 264 F.2d 524, 530, n. 8 (9th Cir.), cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); Wheeler v. United States, 317 F.2d 615, 618 (8th Cir. 1963). The defendant introduced no evidence to show that the guns were not loaded and, therefore, the jury could properly infer that they were loaded.
>
> Morrow v. United States, 408 F.2d 1390, 1391 (8th Cir. 1969).

In Bradley, the instruction was not an issue. There simply was no proof that

---

4. 18 U.S.C. § 2113(a):

 (a) Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, or any savings and loan association . . .

 Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

5. Bradley was mooted ab initio by the death of the appellant pending his appeal in the Supreme Court. 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972). See Durham v. United States, 401 U.S. 481, 483, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971).

6. See note 5 supra.

7. Even in the absence of express proof that a gun used in a bank robbery was loaded, the jury may infer this fact from the circumstance itself. Morrow v. United States, 408 F.2d 1390 (8th Cir. 1969).

the paper bomb was objectively a dangerous weapon. In United States v. Marshall, *supra*, in which the court applied the objective test, there was no evidence that the gun was loaded and the defendant had remarked that it was not. The court rejected the Fifth Circuit's *per se* test and held that it was a question of fact for the jury; in the absence of proof that the gun was loaded, the court held it was plain error to instruct the jury that a person could be put "in jeopardy" by *fear* of death or injury rather than the existence of an objective state of danger. In so holding, Judge Lumbard cautioned as follows:

> In light of the permissible inference that we have said may be used to find that the guns used during a robbery are loaded, we would be quick to find harmless error here if we were convinced that the jury would have found that guns were loaded and accordingly, that lives had been 'in jeopardy.'
> 427 F.2d at 438.

The facts in this case are thus readily distinguishable from *Bradley*, where the paper bomb was objectively incapable of causing harm, and from *Marshall*, where there was no proof at all that the gun was loaded. *See* United States v. Waters, 461 F.2d 248 (10th Cir.), cert. denied sub nom. Robins v. United States, 409 U.S. 880, 93 S.Ct. 207, 34 L.Ed.2d 134 (1972). We hold that where, as here, there is undisputed evidence that one gun was loaded and the lives of persons were thus by any standard objectively in danger, it was at most harmless error to omit a specific instruction requiring that the jury so find.

### LESSER INCLUDED OFFENSE INSTRUCTION

Prior to the charge defense counsel requested the court to instruct the jury on the lesser included offense of larceny of a bank, 18 U.S.C. § 2113(b).[8] The court declined this request, but did give the lesser included offense of bank robbery, 18 U.S.C. § 2113(a).[9] Since defense counsel did not object to the failure of the court to give the requested instruction, the defect if any is waived unless it may be found to be plain error under Rule 52(b). *See* Fed.R.Crim.P. 30.

A lesser included offense instruction is mandated when requested, provided the lesser offense is necessarily included in the offense charged. *See* Fed.R.Crim.P. 31(c). The lesser included offense must be both *lesser* and *included*. These requirements can only be met where the included offense involves fewer of the same constituent elements as the charged greater offense and where the claimed lesser offense has a lighter penalty attached to it than does the charged offense. Thus the claimed included offense must have the same elements as, although fewer of those elements than, the charged greater offense. *See* Annot., 11 A.L.R.Fed. 173 (1972).

Applying these principles, it is clear that both subsections (a) and (b) of § 2113 are necessarily included within the offense set forth in subsection (d).[10]

---

8. (b) Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $5,000 or imprisoned not more than ten years, or both; or

 Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value not exceeding $100 belonging to, or in the care, custody, control, management, or possession of any bank, or any savings and loan association, shall be fined not more than $1,000 or imprisoned not more than one year, or both.

9. *See* note 4 *supra*.

10. Note 2 *supra*. For a discussion of the evolution of § 2113, *see* Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). It has been held that subsection (a) is a lesser included offense within (d). United States v. Methvin, 441 F.2d 584 (5th Cir.), cert. denied, 404 U.S. 839, 92 S. Ct. 130, 30 L.Ed.2d 72 (1971); United States v. Paszek, 432 F.2d 780 (9th Cir. 1970), cert. denied, 402 U.S. 911, 91 S.Ct. 1389, 28 L.Ed.2d 652 (1971). *See also* Green v. United States, 365 U.S. 301, 81 S.

The language of subsection (d) confirms it. However, there is a duty on the defendant to come forward with some evidence if he wishes to have the benefit of a lesser included offense instruction; while a judge cannot prevent a jury from rejecting the prosecution's entire case, he is not obligated to assist a jury in coming to an irrational conclusion of partial acceptance and partial rejection of the prosecution's case. Driscoll v. United States, 356 F.2d 324, 327 (1st Cir. 1966), vacated on other grounds sub nom. Piccioli v. United States, 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968); cf. United States v. Comer, 137 U.S.App.D.C. 214, 421 F.2d 1149, 1154 (1970).

■■ The defense in this case was that appellant, charged as an aider and abetter, did not know the true purpose for which the car was supplied, that he was not present at the robbery and that he was not part of the crime. That the money was taken from the bank by armed robbers was not disputed. The court properly submitted the lesser offense under § 2113(a) of robbery (without putting in jeopardy). The difference between the proof of robbery (subsection (a)) and larceny (subsection (b)) is in the taking "by force and violence, or by intimidation . . ." required in the case of robbery. That requirement is also present in subsection (d), but not in (b). Proof of this element was established beyond reasonable doubt. Before a party is entitled to an instruction upon a lesser included offense, " 'the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent

of the greater and guilty of the lesser included offense.' " United States v. Thompson, 490 F.2d 1218, 1221 (8th Cir. 1974). We hold, upon the evidence adduced in this case, that it was not plain error for the court to refuse to give a lesser included offense instruction on the crime of bank larceny.

## ARGUMENT OF COUNSEL

■ Finally, appellant complains that statements by government counsel in his final argument were improper, prejudicial and, while not objected to, constituted plain error. The specific comment complained of was:

> No independent evidence?' Let's take a look at the totally unimpeached witness that the Government put on that stand by the name of Steward, the owner of that used-car lot. Now, let me ask you this right now. Had he been convicted of a felony? No. Did he have any kind of cross-examination that indicated he wasn't truthful? No. What did he say? Good gravy, what more can you say? 'I want a car for two hours,' the day before. 'I want a car for two hours.' 'Why do you want it for two hours?' 'Going to rob a bank,' or 'I'm going to rob a bank. The messenger is going to deliver some money in the trunk of his car to the grocery store.' * * * He told Steward what he was going to use that car for.

That the prosecutor took liberties with the exact testimony is beyond question.[11] He did not, however, inject evidence not in the case, nor did he engage in any of the other acts of misconduct which have been held to be reversible error.[12] In

Ct. 653, 5 L.Ed.2d 670 (1961); O'Clair v. United States, 470 F.2d 1199 (1st Cir. 1972), cert. denied, 412 U.S. 921, 93 S.Ct. 2741, 37 L.Ed.2d 148 (1973). The Seventh Circuit has held that subsection (b) is not a lesser offense within (a). United States v. Hephner, 410 F.2d 930 (7th Cir. 1969). But see contra: Walker v. United States, 135 U.S.App.D.C. 280, 418 F.2d 1116, 1120 (1969); United States v. Nelson, 160 F. Supp. 881 (D.N.H.1955).

11. See Steward testimony quoted supra.

12. See, e. g., Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) (comments of prosecutor on defendant's failure to testify violates defendant's Fifth Amendment rights); United States v. Achtenberg, 459 F.2d 91, 98–99 (8th Cir.), cert. denied, 409 U.S. 932, 93 S.Ct. 229, 34 L.Ed. 2d 187 (1972) (prosecutor's deliberate misstatement and his effort to distort evidence in closing argument were prejudicial error).

his charge to the jury the trial judge cautioned the jury that argument of counsel was not evidence; that the jurors were the sole judges of the weight of the evidence and the credibility of the witnesses; and that the jury must consider only such matters as are shown by the evidence in open court. Taking the record as a whole, we cannot say that the argument of the prosecutor, balanced by the instructions of the court, affected substantial rights of the appellant. *See* United States v. Phillips, 482 F.2d 191, 196–97 (8th Cir. 1973); Homan v. United States, 279 F.2d 767, 775–76 (8th Cir.), cert. denied, 364 U.S. 866, 81 S.Ct. 110, 5 L.Ed.2d 88 (1960).

The judgment of conviction is affirmed.