**UNITED STATES of America, Appellee,**

v.

**William THOMAS, Appellant.**

No. 74–1823.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1975.

Decided Aug. 1, 1975.

Rehearing Denied Sept. 22, 1975.

William C. Rea, Little Rock, Ark., for appellant.

Richard M. Pence, Jr., Asst. U. S. Atty., Little Rock, Ark., for appellee.

Before MATTHES, Senior Circuit Judge, and HEANEY and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

William Thomas was convicted of attempted aggravated bank robbery in violation of 18 U.S.C. § 2113(d).[1] In his appeal, Thomas challenges (1) the voluntariness of his pre-trial confession, (2) the trial court's instruction to the jury on the meaning of "putting in jeopardy" as used in the statute, (3) the propriety of the court's sending the exhibits to the jury room, (4) the refusal to grant a mistrial after two allegedly inconsistent verdicts were returned, and (5) the sufficiency of the evidence to support the judgment of conviction.

The government's evidence adduced the following facts: On February 25, 1974, a black male wearing a burgundy turtleneck sweater which partially covered his face entered the Palestine, Arkansas, branch of the First National Bank of Eastern Arkansas, a federally insured bank. He approached a teller who was sitting behind a bulletproof glass mounted on a counter and pointed a pistol into the customer exchange slot on the surface of the counter. He said something inaudible while motioning toward the door of the teller's area as if to indicate that he wished to enter. The teller asked, "Are you serious?" and sounded the alarm, whereupon the would-be robber turned and started out the front door. He was observed driving away in a white Ford Fairlane, middle 60's model, with an Arkansas license plate numbered AJC–840.

Approximately one month later, the teller observed Thurston Williams, a customer of the bank, wearing a sweater identical to that worn during the attempted robbery. She knew that Thurston Williams was not the robber. A few months later, she observed appellant Thomas and his brother outside the bank. Thomas fit the description of the man who had attempted to rob the bank, and she noticed that he shook his head in a negative manner and waited outside while his brother entered the bank to transact some business.

A 1967 white Ford Fairlane bearing the Arkansas license number AJC–840 was found abandoned in a field approximately five miles from the bank on March 12, 1974. Two FBI agents, who had received information that appellant had been seen near the vehicle, contacted Thomas and asked him to consent to their taking his fingerprints for elimination purposes, which he did. One of the latent fingerprints lifted by the FBI from the car matched Thomas' left middle fingerprint.

Because Thomas appeared very nervous during the fingerprinting process, he was detained for further interrogation by the FBI. The agents read Thomas his constitutional rights and, stating that he understood those rights, Thomas signed the "Warning of Rights and Waiver Form" which had been read to him. He then admitted that he had stolen the getaway car from a service station where it was parked,[2] borrowed the burgundy turtleneck sweater from Thurston Williams, driven to the bank and attempted to rob it. Thereafter, Thomas accompanied the agents to Williams' home where they recovered the sweater. The agents then arrested Thomas and put his statements into writing. Thomas signed and dated the transcribed confession and initialed "WT" in the various places where corrections had been entered.

Thomas then accompanied the agents to a trailer behind his mother's home where, in the presence of his mother and several relatives, the .22 calibre pistol used in the attempted robbery was re-

1. 18 U.S.C. § 2113(d) provides:

 Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both.

2. Cleophus McNeal, who owned the vehicle used as the getaway car, had left the automobile with a "For Sale" sign at a service station in Forrest City, Arkansas. He had last seen the automobile at 10 p. m. on the night before the attempted bank robbery. The car was missing on the next day.

trieved from an air conditioning duct.[3] Upon his mother's inquiry, Thomas acknowledged that he had committed the attempted bank robbery. He was thereafter charged with putting in jeopardy the life of the teller, Jennie Lou Hanner, while attempting to rob the Palestine branch bank, in violation of 18 U.S.C. § 2113(d). A jury found him guilty of committing the offense charged.

## I. *THE CONFESSION*

The District Court[4] conducted a hearing on the voluntariness of the confession out of the hearing of the jury, *see Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), at which Thomas testified. According to his version of the circumstances surrounding his confession, he was not advised of his constitutional rights until after the recovery of the sweater and pistol, when the FBI agents began putting his alleged confession into writing. Thomas claimed at the pre-trial hearing on the confession that, once warned, he remained uncertain as to the meaning of his constitutional rights, though he admitted knowing that he was entitled to remain silent and to consult an attorney. He testified that although he asked to see an attorney, he was not permitted to do so but was told that he would see an attorney "in time." He claimed that he had signed the statement only because the FBI agents had threatened to charge him with other crimes. He asserted that he had not voluntarily signed the statement and that he had not initialled the pages of the statement.

 The conflict between appellant's version of the circumstances surrounding his confession and that of the government presented a question of credibility for the trier of fact. *United States v. Harvey*, 483 F.2d 448, 449 (5th Cir. 1973), *cert. denied*, 414 U.S. 1160, 94 S.Ct. 920, 39 L.Ed.2d 112 (1974); *United States v. Crovedi*, 467 F.2d 1032, 1036 (7th Cir. 1972), *cert. denied*, 410 U.S. 990, 93 S.Ct. 1510, 36 L.Ed.2d 189 (1973). At the close of the pre-trial hearing, Judge Eisele resolved this conflict in favor of the government, stating "I am convinced by the proof that the statement is voluntary and was given by the defendant with full knowledge and awareness of his rights—that is, after he had been advised of his rights." He further found that the fingerprints were furnished voluntarily, as were the sweater and the gun and overruled the motion to suppress. Such findings are not clearly erroneous, and we perceive no error of law in the admission of the sweater, the pistol, and the confession. *Mullins v. United States*, 487 F.2d 581, 583 (8th Cir. 1973); *United States v. McNally*, 485 F.2d 398, 406 (8th Cir. 1973), *cert. denied*, 415 U.S. 978, 94 S.Ct. 1566, 39 L.Ed.2d 874 (1974).

## II. *"PUTTING IN JEOPARDY"*

The teller testified at trial that she had been afraid and concerned for her safety during the incident.

The offense under 18 U.S.C. § 2113(d)[5] is defined as including all of the elements of attempted bank robbery by means of intimidation, 18 U.S.C. § 2113(a), plus the additional element of placing in jeopardy the life of a person by means of a dangerous weapon or device. It is often referred to as aggravated bank robbery and carries a maximum punishment of twenty-five years imprisonment compared with twenty years for a violation of 18 U.S.C. § 2113(a).[6]

---

**3.** Appellant had pointed out the duct to the agents, and when they were unable to reach the pistol hidden therein, one of appellant's relatives retrieved it for them.

**4.** The United States District Court for the Eastern District of Arkansas, The Honorable G. Thomas Eisele presiding.

**5.** *See* note 1, *supra*.

**6.** 18 U.S.C. § 2113(a) provides:

Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another any property or money or any other thing of value belonging to, or in the care, custody, control, manage-

In his charge to the jury, Judge Eisele defined "dangerous weapon or device" and "to put in jeopardy the life of a person," as follows:

[A] 'dangerous weapon or device' includes anything capable of being readily operated, manipulated, wielded, or otherwise used by one or more persons to inflict severe bodily harm or injury upon another person. So, an operable firearm, such as a pistol, revolver, or other gun, capable of firing a bullet or other ammunition, may be found to be a dangerous weapon or device.

To 'put in jeopardy the life' of a person 'by the use of a dangerous weapon or device' means, then, to expose such person to a risk of death, or to the fear of death, by the use of such dangerous weapon or device.

You may find that the defendant put in jeopardy the life of another person even though the defendant did not have actual ability to inflict severe bodily harm or injury. It is sufficient if the defendant created in the mind of a reasonable person the apprehension of death or serious bodily harm or injury by the use of an apparently dangerous weapon or device.

Appellant objects to the giving of the instruction because he contends there was insufficient evidence of putting in jeopardy to submit the aggravated offense to the jury. He asserts that, since

ment, or possession of, any bank, credit union, or any savings and loan association . . .

\* \* \* \* \* \*

Shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

7. Other courts have found an objective test to be necessary in varying degrees. It has been rejected by the Sixth Circuit in *United States v. Beasley*, 438 F.2d 1279 (6th Cir.), *cert. denied*, 404 U.S. 866, 92 S.Ct. 124, 30 L.Ed.2d 110 (1971). *But see United States v. Thomas*, 455 F.2d 320 (6th Cir. 1972). The Fifth Circuit has found that in the highly charged atmosphere of a bank robbery by robbers bearing drawn guns, persons are placed in jeopardy as a matter of law. *Baker v. United States*, 412 F.2d 1069, 1071–72 (5th Cir. 1969), *cert. denied*, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970); *accord, United States v. March-*

there was no evidence that the pistol used in the robbery was loaded, at most the lesser included offense of attempted robbery by intimidation, 18 U.S.C. § 2113(a), should have been submitted to the jury.

■ While objection at trial to the first two paragraphs of the quoted instruction can be found, if at all, only in Thomas' general objection on sufficiency grounds, he did specifically object to the third paragraph of the quoted instruction on the ground that it permitted "jeopardy" to be established without objective evidence that at the time of the robbery he possessed the ability to inflict severe bodily harm or injury. The latter objection was well taken.

The instructions on putting in jeopardy, especially the third quoted paragraph, conflict with our holding in *Morrow v. United States*, 408 F.2d 1390, 1391 (8th Cir. 1969), in which we said:

The test of whether a victim's life has been placed in danger is an objective one; "not whether the employee was put in fear but whether his life *was* put in danger by the use of a dangerous weapon." (Emphasis supplied.) *United States v. Donovan*, 242 F.2d 61, 63 (2d Cir. 1957), rev'd on other grounds sub nom. *Andrews v. United States*, 373 U.S. 334, 83 S.Ct. 1236, 10 L.Ed.2d 383 (1963).[7]

*banks*, 469 F.2d 72 (5th Cir. 1972). The Seventh Circuit goes directly to a permissible finding of "in jeopardy" when a gun "is visible and where its display backs up [the robber's] demands." *United States v. Roustio*, 455 F.2d 366, 371 (7th Cir. 1972). *See also United States v. Shelton*, 465 F.2d 361 (4th Cir. 1972). The Second, Ninth and Tenth Circuits have focused, as have we, upon the permissible inference which a jury may draw that a gun displayed during a bank robbery was loaded and therefore objectively capable of causing harm. *United States v. Marshall*, 427 F.2d 434 (2d Cir. 1970); *Wagner v. United States*, 264 F.2d 524, 530 (9th Cir.), *cert. denied*, 380 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); *Lewis v. United States*, 365 F.2d 672 (10th Cir. 1966), *cert. denied*, 386 U.S. 945, 87 S.Ct. 978, 17 L.Ed.2d 875 (1967).

In satisfying the objective test, however, express proof that the gun used in a bank robbery was loaded is not required. The jury may infer this fact from the circumstance itself. *United States v. Cady*, 495 F.2d 742, 746 n. 7 (8th Cir. 1974); *Morrow v. United States, supra.*[8]

The jurors were not so instructed, however, because the third quoted paragraph permitted them to find that defendant had placed the teller's life in jeopardy if she reasonably feared for her life because the weapon was "apparently dangerous." While the fact that a gun was loaded and therefore dangerous may be inferred from the circumstances, the fact of jeopardy cannot be found simply because the weapon "appeared" to be dangerous to the victim, however reasonable her fears. From the former may be found jeopardy; from the latter may be found merely intimidation, the lesser included offense. Unless placing in jeopardy can be said to mean more than placing in fear, then nothing has been added to § 2113(d) over § 2113(a) to explain or justify the enhanced punishment which subdivision (d) permits. *United States v. Marshall*, 427 F.2d 434, 437–38 (2d Cir. 1970); *see United States v. Marchbanks*, 469 F.2d 72, 74 (5th Cir. 1972).

We dealt with the first two paragraphs of the quoted instruction given by Judge Eisele in *United States v.* *Cady, supra.* We held in that case that permitting evidence of "fear of death," instead of requiring the jury to find that the victim's life was in fact placed in danger by means of a weapon capable of causing harm, was at most harmless error since there was undisputed evidence in the case that at least one gun was loaded. In this case no such undisputed facts are present to render the instructions harmless. The instructions as given authorized the jury to convict under 18 U.S.C. § 2113(d) upon minimum findings which would be sufficient only to convict under 18 U.S.C. § 2113(a), the lesser included offense. We cannot say with fair assurance that the jury would have found defendant guilty of the aggravated offense notwithstanding the erroneous instruction. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). The third quoted paragraph is clearly contrary to our holding in *Morrow*[9] and its use must be discontinued along with the "or to the fear of death" clause (in the second quoted paragraph) which spawned it.[10]

## III. THE EXHIBITS

Appellant contends the trial judge committed prejudicial error when he sent all of the exhibits, including the gun, to the jury room following the jury's request to see the signed confession which had been received in evidence as a government exhibit. The manage-

---

8. Direct evidence [that a gun is loaded] is unnecessary. "When * * * a robber displays a gun to back up his demands, he wants the victim to believe that it is loaded, and the factfinder may fairly infer that it was." *Wagner v. United States*, 264 F.2d 524, 530, n. 8 (9th Cir.), cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); *Wheeler v. United States*, 317 F.2d 615, 618 (8th Cir. 1963). The defendant introduced no evidence to show that the guns were not loaded and, therefore, the jury could properly infer that they were loaded.
408 F.2d at 1391.

9. We reached a similar conclusion in *Bradley v. United States*, 447 F.2d 264 (8th Cir. 1971), vacated as moot, 404 U.S. 567, 92 S.Ct. 746, 30 L.Ed.2d 722 (1972), but that case was mooted ab initio by the death of the appellant pending his appeal in the Supreme Court. *See Durham v. United States*, 401 U.S. 481, 483, 91 S.Ct. 858, 28 L.Ed.2d 200 (1971).

10. We suggest instead that the jury be informed that where a robber displays a gun to back up his demands the jury is entitled to infer that the gun is loaded where there is no credible evidence to the contrary. *Morrow v. United States*, 408 F.2d 1390, 1391 (8th Cir. 1969).

ment of exhibits lies in the sound discretion of the trial judge, and an appellate court will not interfere unless there has been a clear abuse of discretion. *United States v. Parker*, 491 F.2d 517, 521 (8th Cir. 1973), *cert. denied*, 416 U.S. 989, 94 S.Ct. 2396, 40 L.Ed.2d 767 (1974). We think Judge Eisele acted wisely, since sending the confession alone to the jury might have caused undue emphasis to be placed upon one exhibit in the case.

## IV. *INCONSISTENT VERDICTS*

■ When the jury returned following its deliberations, it presented two verdict forms showing a verdict of guilty both of the major offense charged in the indictment and of the lesser included offense of attempted bank robbery which did not put in jeopardy the life of any person by the use of a dangerous weapon. Judge Eisele, after conferring with counsel, reserved ruling on defense counsel's motion for mistrial based upon inconsistent verdicts and ordered the jury to return for further deliberations.[11] Judge Eisele instructed the jury as follows:

> The point I think I need to make at this juncture is that if you find the defendant guilty of the crime included in the indictment, which is of attempting to rob the bank and putting the life of the teller in jeopardy, then that is the only form that needs to be filled out. If you do not find that to be the case, but find that he is guilty of attempting to rob the bank without putting her life in jeopardy, then only one of them needs to be signed; and that is the lesser included offense.

Thereafter the jury returned with a single verdict form finding defendant guilty of the offense charged in the indictment. At request of defense counsel, the jury was polled and each juror concurred in the verdict.

The procedure followed by Judge Eisele was exactly the procedure which we recommended in *United States v. Howard,* 507 F.2d 559, 562 (8th Cir. 1974), where we said:

> We * * * suggest that, in future cases where a verdict not in proper form or arguably unclear is rendered, the jury be returned to their room for further deliberations to correct the problem.

*See also United States v. Walker,* 456 F.2d 1037, 1039 (5th Cir. 1972); *United States v. Wolford,* 144 U.S.App.D.C. 1, 444 F.2d 876, 887 (1971); *United States v. Henson,* 365 F.2d 282, 284 (6th Cir.), *cert. denied,* 385 U.S. 974, 87 S.Ct. 513, 17 L.Ed.2d 437 (1966); *Helms v. United States,* 310 F.2d 236, 240 (5th Cir. 1962). This contention is without merit.

## V. *SUFFICIENCY OF THE EVIDENCE*

■ We have no doubt that the evidence presented was sufficient, if believed, to support a conviction for violation of the aggravated offense of § 2113(d) and necessarily the lesser included offense of § 2113(a). When a challenge is made to the sufficiency of the evidence, it must be viewed in the light most favorable to the government. *United States v. Swanson,* 509 F.2d 1205, 1210 (8th Cir. 1975); *United States v. Hutchinson,* 488 F.2d 484, 489 (8th Cir. 1973), *cert. denied,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). The testimony of eyewitnesses, together with appellant's own confession [12] and the physical evidence admitted at trial, formed convincing evidence from which a jury might reasonably find beyond reasonable doubt that the defendant attempted to rob the bank and while doing so placed the life of the teller in jeopardy by the use of a dangerous and deadly weapon.

---

11. This motion was ultimately denied.

12. Appellant did not take the stand at trial to refute the confession or to assert that it was not voluntarily made.

Whether, in view of the bulletproof glass which protected·the teller and the nature of the exchange slot on the surface of the counter, the appellant was capable of placing the teller's life in jeopardy was an issue of fact to be determined by the jury.

Thus the error in this case was not in the sufficiency of the evidence, but rather in permitting the jury, under the instructions as given, to return a verdict of guilty under the major offense "even though the defendant did not have the actual ability to inflict severe bodily harm or injury." This instruction permitted a finding of guilty of the aggravated offense upon findings which would, for reasons stated above, be sufficient only to convict on the lesser offense of attempted robbery by intimidation.

Our disapproval of the instruction does not, under the circumstances of this case, require reversal and a new trial. The issue of defendant's guilt under the lesser included offense was properly submitted to the jury and, in fact, the jury originally returned a verdict of guilty on both the major and lesser offenses. It will be sufficient in this case to vacate the sentence imposed under § 2113(d) and to remand for resentencing under § 2113(a). *See Scruggs v. United States*, 450 F.2d 359 (8th Cir. 1971), *cert. denied*, 405 U.S. 1071, 92 S.Ct. 1521, 31 L.Ed.2d 804 (1972); *United States v. Marshall, supra*. The trial court had all of the facts before it at time of sentencing. Appellant was sentenced to four years imprisonment, well within the maximum limits of both § 2113(a) and § 2113(d). While a motion to reduce sentence would lie under Rule 35, Federal Rules of Criminal Procedure, we prefer to vacate the original sentence in order that the trial judge may exercise his discretion anew under 18 U.S.C. § 2113(a).

Remanded for further proceedings in accordance with this opinion.