**UNITED STATES of America, Appellee,**

v.

**Ralph BEAR KILLER, Jr., Appellant.**

**No. 75–1814.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 12, 1976.

Decided April 16, 1976.

Rehearing and Rehearing En Banc Denied May 13, 1976.

---

Edward C. Carpenter, Rapid City, S. D., for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee; William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief.

Before LAY, HEANEY and STEPHENSON, Circuit Judges.

HEANEY, Circuit Judge.

Ralph Charles Bear Killer, Jr., an Indian, was charged by indictment with second-degree murder in violation of 18 U.S.C.

§§ 1153 and 1111. He appeals from a judgment of conviction based upon a jury verdict of guilty to the lesser included offense of involuntary manslaughter.

The appellant assigns as error the admission in evidence of two in-custody statements. He argues that the statements should have been suppressed because the government delayed unreasonably in bringing him before a magistrate contrary to 18 U.S.C. § 3501(c)[1] and Federal Rule of Criminal Procedure 5(a).[2] The District Court found the statements to be voluntary and the delay reasonable.

We outline the pertinent facts. In the early morning hours of July 9, 1975, at the Allen, South Dakota, housing district on the Pine Ridge Indian Reservation, Vincent DuBray died from a gunshot wound. At 5:18 A.M. of the same day, Bear Killer and two other suspects of the shooting death, Donald Tallman and Harlan Garnett, were arrested by officers of the Bureau of Indian Affairs. The appellant's arrest was perfected without a warrant. He was charged with the tribal offense of disorderly conduct and detained in the Pine Ridge Jail.

Later that morning, about 6:00 A.M., the Federal Bureau of Investigation was advised of DuBray's death. By 9:00 A.M., a preliminary investigation, including an interview with an eyewitness to the shooting, Bernadine Scout, had been completed. Scout stated that the appellant had shot DuBray. Bear Killer was not interviewed at that hour because of his intoxicated condition.

The suspects were interviewed that afternoon. Garnett, the first to be questioned, implicated the appellant as the perpetrator of the crime. Bear Killer was then given *Miranda* warnings and questioned. He denied complicity in the crime. The interview, which lasted approximately twenty-four minutes, was completed by 2:55 P.M. Immediately thereafter, the F.B.I. was authorized by an Assistant United States Attorney to charge Bear Killer with the killing.

The F.B.I. then transported the appellant to Rapid City, South Dakota, a distance of approximately one hundred miles. Upon their arrival at 5:25 P.M., too late for presentment to a magistrate, Bear Killer said: "I suppose you want to know why I shot him?" The F.B.I. again issued *Miranda* warnings, and Bear Killer gave a second statement implicating him in the shooting death of DuBray. This second interview was completed by 5:48 P.M.

 In *United States v. Keeble*, 459 F.2d 757 (8th Cir. 1972), *rev'd on other*

---

1. 18 U.S.C. § 3501(c) states:

 In any criminal prosecution by the United States or by the District of Columbia, a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer or law-enforcement agency, shall not be inadmissible solely because of delay in bringing such person before a magistrate or other officer empowered to commit persons charged with offenses against the laws of the United States or of the District of Columbia if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest or other detention: *Provided,* That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

2. Federal Rule of Criminal Procedure 5(a) states:

 An officer making an arrest under a warrant issued upon a complaint or any person making an arrest without a warrant shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041. If a person arrested without a warrant is brought before a magistrate, a complaint shall be filed forthwith which shall comply with the requirements of Rule 4(a) with respect to the showing of probable cause. When a person, arrested with or without a warrant or given a summons, appears initially before the magistrate, the magistrate shall proceed in accordance with the applicable subdivisions of this rule.

*grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973), we held that the critical inquiry into the admissibility of in-custody statements is whether, in the light of all the circumstances, they were voluntary. The delay between arrest and confession is a factor that must be considered in this inquiry. But a delay alone will not render a confession inadmissible. Notwithstanding the urgings of the appellant, we continue to adhere to *Keeble.*[3] *Accord, United States v. McCormick,* 468 F.2d 68 (10th Cir. 1972), *cert. denied,* 410 U.S. 927, 93 S.Ct. 1361, 35 L.Ed.2d 588 (1973); *United States v. Halbert,* 436 F.2d 1226 (9th Cir. 1970). In so doing, we repeat the Supreme Court's admonition that the simple fact of custody is coercive.[4] It is a subtle form of pressure that plays against the will of a suspect, the effects of which are most difficult to measure. Accordingly, the reasons for delay must be carefully scrutinized. A statement given while in custody is not admissible if it is the product of an improper encroachment on the right to an initial appearance before a magistrate. *See United States v. Keeble, supra* at 761. As noted by the Supreme Court:

> [O]rdinarily there is no need for further investigation before the probable cause determination can be made.
>
> "Presumably, whomever the police arrest they must arrest on 'probable cause.' It is not the function of the police to arrest,

as it were, at large and use an interrogating process at police headquarters in order to determine whom they should charge before a committing magistrate on 'probable cause.'" *Mallory v. United States,* 354 U.S. 449, 456, 77 S.Ct. 1356, 1360, 1 L.Ed.2d 1479 (1957).

*Gerstein v. Pugh,* 420 U.S. 103, 120, 95 S.Ct. 854, 866, 43 L.Ed.2d 54, 69 n. 21 (1975).[5]

Bear Killer was advised of his rights under *Miranda* before each interrogation, he was aware of the nature of the offense under investigation, he was denied neither sleep nor food, and the questioning was neither of an oppressive nor a harassing nature. Moreover, the delay did not result from F.B.I. attempts to coerce the appellant to incriminate himself. Rather, it resulted from compliance with the local practice of permitting intoxicated arrestees to become sober before questioning and presentment to a magistrate and from the fact that approximately one hundred miles had to be traveled before a magistrate could be obtained.

▮▮▮ The District Court considered the totality of the circumstances, including the fact of delay and the reasons for the delay. It found the delay to be reasonable and the in-custody statements to be voluntary. These findings are not clearly erroneous. *United States v. Thomas,* 521 F.2d 76, 79 (8th Cir. 1975); *United States v. Delay,* 500 F.2d 1360, 1365 (8th Cir. 1974).

---

3. The delay between the appellant's arrest and his in-custody statements must be measured, under Federal Rule of Criminal Procedure 5(a), from 5:18 A.M. When Bear Killer was apprehended, the B.I.A. police were aware of Bernadine Scout's eyewitness account implicating the appellant and were investigating the shooting incident. The arrest placed Bear Killer in federal custody on the basis of a probable violation of 18 U.S.C. §§ 1153 and 1111. The fact that the B.I.A. police charged the appellant with a tribal offense and failed to formally state that the arrest was for probable violation of the federal criminal laws is irrelevant. *United States v. Keeble,* 459 F.2d 757, 760 (8th Cir. 1972), *rev'd on other grounds,* 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). Bear Killer gave the first statement approximately nine and one-half hours after his arrest and gave the second statement approximately twelve hours after his arrest.

4. The Court has said:
> [T]he techniques of police questioning and the nature of custodial surroundings produce an inherently coercive situation.

*Schneckloth v. Bustamonte,* 412 U.S. 218, 247, 93 S.Ct. 2041, 2058, 36 L.Ed.2d 854, 874 (1973).

5. The Supreme Court also noted:
> Once the suspect is in custody * * * the reasons that justify dispensing with the magistrate's neutral judgment evaporate. There no longer is any danger that the suspect will escape or commit further crimes while the police submit their evidence to a magistrate. And, while the State's reasons for taking summary action subside, the suspect's need for a neutral determination of probable cause increases significantly.

*Gerstein v. Pugh,* 420 U.S. 103, 114, 95 S.Ct. 854, 863, 43 L.Ed.2d 54, 65 (1975).

■■ Bear Killer also argues that the District Court erred in giving the following instruction relative to the jury's consideration of the appellant's in-custody statements:

The Court instructs you that it has found that the statement made by the defendant at the time of his arrest was voluntary and based upon the Court's finding the Government witnesses were permitted to testify as to certain statements which the defendant was alleged to have made. However, it is for the jury to determine the credibility and weight to be given to such statements with respect to the defendant's innocence or guilt.

He objects specifically to that portion of the instruction which informs the jury that the in-custody statements were found to be voluntary.[6] The instruction is based upon *United States v. Adams*, 484 F.2d 357 (7th Cir. 1973).[7] We agree with the appellant that the instruction is erroneous but decline to reverse the conviction.

■ The District Court's instruction operates to limit the factual inquiry of the jury contrary to the statutory command of 18 U.S.C. § 3501(a). That statute states in relevant part:

If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give

such weight to the confession as the jury feels it deserves under all the circumstances.

The instruction, which informs the jury that in-custody statements are in law and in fact voluntary, renders superfluous any evidence relative to the conditions under which the statements were given. It makes impossible, as a general rule, the fulfillment of the jury's duty to give the statements such weight as they deserve under all of the circumstances. The presence of duress in the procurement of in-custody statements is clearly relevant to their reliability. *See Lego v. Twomey*, 404 U.S. 477, 484–486, 92 S.Ct. 619, 624–625, 30 L.Ed.2d 618, 624–625 (1972). We agree with the observations made by the Second Circuit in construing 18 U.S.C. § 3501(a):[8]

In short, Congress's unmistakable intent to provide adequate protection against the use of coerced confessions clearly included a desire that the jury play a part in weighing the evidence of duress.

\* \* \* \* \* \*

We would be acting contrary both to the language of the statute and to the intent of Congress were we to exclude the issue of fairness in securing the confession, independently of its reliability, from the ambit of jury consideration.

*United States v. Barry*, 518 F.2d 342, 347, 348 (2nd Cir. 1975).

---

6. Bear Killer does not contend that the jury should have been instructed that it could disregard the in-custody statements if it found them to be involuntary. In this Circuit, the admissibility of a confession need not be redetermined by the jury. *Caton v. United States*, 407 F.2d 367 (8th Cir.), *cert. denied*, 395 U.S. 984, 89 S.Ct. 2149, 23 L.Ed.2d 773 (1969); *Tucker v. United States*, 375 F.2d 363 (8th Cir.), *cert. denied*, 389 U.S. 888, 88 S.Ct. 128, 19 L.Ed.2d 189 (1967). *Contra, United States v. Inman*, 352 F.2d 954 (4th Cir. 1965).

7. The decision in *United States v. Adams*, 484 F.2d 357 (7th Cir. 1973), is broad enough to support the District Court's instruction. However, the issue presented, strictly read, was whether it was error to deny the defendant's requested instruction which sought to have the

jury redetermine the constitutional admissibility of the confession.

8. In *United States v. Williams*, 484 F.2d 176 (8th Cir.) (per curiam), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 475 (1973), we held that 18 U.S.C. § 3501(a) does not mandate a particular wording for an instruction on the weight to be accorded a confession and that it was not plain error to instruct generally on the credibility and weight to be accorded witness testimony. That case does not support the instruction given here. In the instant case, the error was preserved by proper objection, and the District Court not only failed to give a separate instruction relative to confessions but, by the instruction given, affirmatively limited the factual inquiry of the jury in its determination of the reliability of the confession.

■ Moreover, irrespective of the statutory command, fairness requires that the court not disclose to the jury its finding of voluntariness. *See United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970); *Ellis v. Fitzharris*, 407 F.2d 799, 803 n. 8 (9th Cir. 1969); *United States v. Fayette*, 388 F.2d 728, 736 (2nd Cir. 1968). Disclosure places upon the in-custody statements the imprimatur of the court which, it must be presumed, influences the jury. *See Lego v. Twomey, supra* 404 U.S. at 483–484, 92 S.Ct. at 623–624, 30 L.Ed.2d at 623–624.

■ The determination of the admissibility of in-custody statements turns upon their voluntariness. The court, in the suppression hearing, is concerned solely with the vindication of the constitutional right. Indeed, it is error for the court to consider, in any degree, the reliability of the confession. *Id.* 404 U.S. at 484 n. 12, 92 S.Ct. at 624, 30 L.Ed.2d at 624; *Hutcherson v. United States*, 122 U.S.App.D.C. 51, 351 F.2d 748, 755 (1965). Hence, the instruction which discloses the court's finding of voluntariness not only improperly influences the jury in its determination of guilt or innocence, but does so when the reliability of the in-custody statements was irrelevant to the court's finding and not determined by it. Moreover, the government's burden of proving guilt beyond a reasonable doubt under *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), is lightened to the extent that the jury accepts the in-custody statements as truthful because of the court's determination, made upon a preponderance of the evidence, that the statements are voluntary. *See Lego v. Twomey, supra* 404 U.S. at 486, 92 S.Ct. at 625, 30 L.Ed.2d at 625.

The instruction should not have been given and is not to be given in the future. But because we have not heretofore spoken on the matter, we consider whether the error was harmless. We are convinced, upon careful review of the entire proceedings, that the erroneous instruction was harmless and did not have a substantial influence on the jury's verdict of guilty in this cause. *See Kotteakos v. United States*, 328 U.S. 750, 763–764, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557, 1565–1566 (1946).

Except for the fact of custody itself, there was no evidence that coercion of any sort was used to obtain the appellant's in-custody statements. The procedures employed in the interrogation of Bear Killer were fair. Thus, while 18 U.S.C. § 3501(a) contemplates that a confession's reliability will be determined by the jury only after consideration of all the circumstances, including the conditions under which the confession was obtained, no circumstance at issue was precluded from the jury's consideration. Also, the District Court stated expressly in the instruction that its finding of voluntariness was relevant only to the issue of whether the testimony of government witnesses was admissible and that the weight to be accorded the statements on the issue of innocence or guilt was solely for the jury. While the court's ruling of admissibility was irrelevant to the jury's function, the instruction mitigated the inference that voluntary statements are also truthful statements. Moreover, immediately following the instruction at issue, the jury was properly directed as to the presumption of innocence and the government's burden of proving guilt beyond a reasonable doubt. Finally, while the government sought a conviction for second-degree murder, the jury exercised its independent judgment, weighed the evidence and reached a verdict of guilty of involuntary manslaughter. The verdict is clearly justified by the record. In addition to the admission of Bear Killer, the government's proof included an eyewitnesses account of the crime with corroborative testimony that placed the appellant at the scene of the crime and that indicated he intended to shoot DuBray. Also, the factual account of the shooting given by Bear Killer in his second statement to the F.B.I. was corroborated by the testimony of the government pathologist.[9] The instruction,

---

9. Bear Killer told the F.B.I. and the government's pathologist testified that the fatal bullet ricocheted off the ground before it wounded DuBray.

while error, did not substantially influence the judgment of conviction.

■■■ Bear Killer also argues that the District Court erred in instructing the jury that:

A defendant who wishes to testify is a competent witness, and his testimony should be judged in the same way as that of any other witness. In determining the degree of credibility that should be accorded by you to the defendant's testimony, you're entitled to take into consideration the fact that he is the defendant and the personal interest he has in the result of your verdict.

He contends that the instruction improperly singled out and rendered suspect his testimony. Indeed, it immediately followed and was separate and apart from the court's instruction on the credibility of witnesses generally.

Again, the instruction should not have been given, It is difficult to understand, in the light of the decisions of this Circuit,[10] why it was given. We have repeatedly said that the testimony of the accused should not be "singled out" in the court's charge. Each time that a District Court does "single out" the accused's testimony, it not only disregards a clear statement of direction by this Court but assumes the very substantial risk that the error will be found to be prejudicial. Indeed, the continued use of this instruction can cause this Court to declare, as a *per se* rule, that the error in giving the instruction can never be considered harmless.

But again, under the facts presented, the error was not prejudicial. The appellant's personal interest in the outcome of the trial proceedings was obvious to the jurors, the instruction was not inflammatory and it did not intimate, as Bear Killer argues, that the appellant was a perjurer. Moreover, defense counsel's objections to the charge did not inform the presiding judge, who sat by special assignment, that the rule of this Circuit is contrary to that followed in his Circuit.[11]

Error is also assigned to the District Court's instruction that the jury could consider as substantive evidence false exculpatory statements of the appellant. Specifically, the instruction was directed at Bear Killer's first in-custody statement in which he asserted his innocence and stated that he was with his wife at his father-in-law's residence at the time DuBray was shot.

■■■ A denial of guilt can never be evidence of guilt. *United States v. Sutherland*, 428 F.2d 1152, 1157 (5th Cir. 1970). But, the appellant's statement went beyond a declaration of innocence and asserted an affirmative alibi to the crime charged. The instruction was proper. *United States v. Merrill*, 484 F.2d 168, 170 (8th Cir.), *cert. denied*, 414 U.S. 1077, 94 S.Ct. 594, 38 L.Ed.2d 484 (1973); *Rizzo v. United States*, 304 F.2d 810, 830 (8th Cir.), *cert. denied*, 371 U.S. 890, 83 S.Ct. 188, 9 L.Ed.2d 123 (1962).

Bear Killer also contends that the District Court erred in admitting the testimony of Arveal Whirlwind Horse that the appellant owned a .22 caliber, a .243 caliber and a 30.06 caliber rifle and that the remarks of the prosecutor made in meeting defense counsel's objection to that testimony was prejudicial.

■■■ The government's proof established that DuBray had died from a wound caused by a .22 or .25 caliber weapon and that the appellant had fired the fatal shot. But the search of Bear Killer's residence had resulted only in the seizure of a .308 caliber rifle which the appellant and his wife testified was the only weapon that Bear Killer had

---

**10.** *See United States v. Brown*, 453 F.2d 101, 107 (8th Cir.), *cert. denied*, 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *United States v. Long*, 449 F.2d 288, 298–299 (8th Cir. 1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 247 (1972); *Taylor v. United States*, 390 F.2d 278, 284–285 (8th Cir.), *cert. denied*, 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968).

**11.** The Honorable William O. Mehrtens, Senior Judge from the Southern District of Florida, presided over the proceedings below. In the Fifth Circuit, the instruction is not improper. *See United States v. Haney*, 429 F.2d 1282 (5th Cir. 1970).

in his possession the night DuBray died. In rebuttal, the government introduced the firsthand testimony of Whirlwind Horse. Clearly, the evidence that Bear Killer owned three other weapons, including a .22 caliber rifle, was relevant as tending to prove circumstantially the appellant's guilt. Its admittance into evidence was not error. *See* Federal Rules of Evidence, 401 and 402. The fact that Whirlwind Horse had previously told the F.B.I. that the appellant was carrying a heavy caliber weapon on the night in issue and that Whirlwind Horse may have had a personal bias against Bear Killer are matters which affect only the weight of the testimony, not its admissibility.

■ Nor do we agree that the prosecutor's response to defense counsel's objection to the testimony was prejudicial. The prosecutor said: "Your Honor, we wish to establish that the ownership because of the fact the weapon is not available to us." The statement says no more than that the government had to prove by circumstantial evidence that Bear Killer used a weapon of the caliber that killed DuBray. The testimony was admitted on that basis, and the government fulfilled its representation that its relevance would be established. *See* Federal Rule of Evidence 104(b).

■ Whirlwind Horse also testified that Bear Killer had been involved in a previous shooting incident. The testimony was stricken from the record, on motion of defense counsel, for the reason that it was not entirely responsive to the question asked. Defense counsel's motion for a mistrial was, however, denied.

The failure to grant the mistrial motion is not reversible error. The testimony, once stricken from the record, was not pursued

further, the appellant did not request a limiting instruction, and, while prejudice is alleged, Bear Killer does not specify how Whirlwind Horse's testimony affected the fairness of the trial. We cannot say that the District Court abused its discretion. *United States v. Scogin*, 459 F.2d 182, 185 (8th Cir.), *cert. denied*, 409 U.S. 865, 93 S.Ct. 159, 34 L.Ed.2d 114 (1972); *Frohmann v. United States*, 380 F.2d 832, 835 (8th Cir.), *cert. denied*, 389 U.S. 976, 88 S.Ct. 478, 19 L.Ed.2d 469 (1967).

■ Nor can we say that it was error to deny Bear Killer's motion, joined by defense counsel, that the trial be continued to allow substitution of counsel. Bear Killer alleged that his appointed counsel was prejudiced against Indians and had attempted to force him to plead guilty to manslaughter.

The hearing held upon the motion clearly disclosed, however, that the defense counsel had merely advised the appellant that a plea of guilty to a lesser included offense was an available option to be considered. Counsel never recommended that Bear Killer plead guilty. Moreover, when asked to particularize his complaints about his counsel, the appellant stated that he had none. The motion was first made upon the day of trial and the appointed counsel was experienced in criminal matters. The District Court's denial of the motion was not an abuse of discretion. *See McDonald v. State of Arkansas*, 501 F.2d 385, 388 (8th Cir.), *cert. denied*, 419 U.S. 1004, 95 S.Ct. 325, 42 L.Ed.2d 280 (1974); *United States v. Burden*, 497 F.2d 385, 387 (8th Cir. 1974).

■ Finally, we reject the appellant's contention that it was prejudicial error to supplementally instruct the jury after it had deliberated but two hours and had not indicated an inability to arrive at a verdict.[12] While the record on appeal does

---

12. The supplemental instruction states:

Ladies and Gentlemen of the Jury, this has been a somewhat protracted case and I know that most of us are tired by virtue of the long hours that we have been spending in the courtroom. I know that all of you have listened to the evidence tentatively and I want to advise you, of course, we are approaching the dinner hour, the Court stands ready at all

times to be of what assistance it may to the jury with respect to the matters of law pertaining to the suit. You have requested a copy of the instructions which in accordance with the local practice I have sent in to you and I would suggest if there is any question in any juror's mind with respect to the instructions which are rather lengthy that you read the instructions very carefully and as I instructed you you must apply the law that I

not manifest the reasons for the additional instruction, it does reveal that the charge was not coercive. *See United States v. Ringland*, 497 F.2d 1250, 1253 (8th Cir. 1974); *United States v. Bowles*, 428 F.2d 592, 595–596 (2nd Cir.), *cert. denied*, 400 U.S. 928, 91 S.Ct. 193, 27 L.Ed.2d 188 (1970); *Jacobs v. United States*, 279 F.2d 826, 831–832 (8th Cir. 1960).

The judgment of conviction is affirmed.

tell you is the applicable law, that is, whether you agree with it or disagree with it, you have taken a solemn oath to apply to the facts as you find them the law that I tell you is the applicable law. Now, if I can be of any assistance to you in any way with respect to the law applicable to this case or to assist you in arriving at a fair and just verdict I fully want you to know that I am ready, able and willing at any time to answer any questions that you may have to submit to the Court and I don't want you to feel hesitant if there are such questions that you might have, but I do suggest that since the instructions were rather lengthy that you read those over very carefully and then apply to the facts as you find them the law I tell you is the applicable law. I am making these suggestions to you in an effort of being of help to you so you can again retire now and resume your deliberations.