**The UNITED STATES of America, Appellee,**

v.

**Victor STANDING SOLDIER, Appellant.**

**No. 75–1798.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1976.

Decided June 28, 1976.

Rehearing and Rehearing En Banc Denied Aug. 19, 1976.

---

**198**

Terry L. Pechota and Mary Ellen Sloan, South Dakota Legal Services, Mission, S. D., for appellant.

Gary Annear, Asst. U. S. Atty., Fargo, N. D., for appellee; William F. Clayton, U. S. Atty., Sioux Falls, S. D., on brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Victor Standing Soldier appeals from his conviction of assault with intent to kill in violation of 18 U.S.C. §§ 1153 and 113(a). He raises numerous claims of trial error, centering chiefly upon evidence of confessions made while in custody, evidence offered in corroboration thereof, and instructions on the effect to be given thereto.[1] For the reasons given below, we affirm the conviction.

The principal facts are not in dispute. On the morning of March 26, 1975, Marvin Tootoo and Burgess Red Cloud met Standing Soldier at the Pine Ridge, South Dakota, post office. The three men began drinking wine. They then took a ride with three other persons to Chadron, Nebraska, drinking beer along the way to and while in Chadron. When the weather turned bad, the six persons returned to Pine Ridge, where Standing Soldier, Tootoo, and Red Cloud were let off at Red Cloud's trailer around noon.

At approximately 1:35 p.m., Standing Soldier appeared at the home of Mr. and Mrs. David Howell and told Mrs. Howell to telephone the police because he had just killed a man. Mrs. Howell complied and

---

**1.** Specifically, he contends: (1) that the District Court erred in admitting evidence of three statements which he made to Federal Bureau of Investigation (FBI) agents and Bureau of Indian Affairs (BIA) officers because of violations of the standards set forth in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); (2) that the statement made seven days after his arrest was inadmissible because of the delay between his arrest and arraignment before the magistrate and because it was involuntary; (3) that the District Court erred in permitting testimony concerning a note allegedly written by the appellant because the note was not properly identified and authenti- cated and because the original note was not offered; (4) that the District Court erred in instructing the jury that the court had found the appellant's statements to have been made voluntarily and in failing properly to instruct the jury as to its determination on the issue of voluntariness; (5) that the District Court erred in instructing the jury that it could take into consideration the appellant's personal interest in the result when evaluating his credibility; (6) that the evidence was insufficient as a matter of law to support the conviction; and (7) that the District Court erred in failing to order a presentence investigation without explaining its reasons for not so doing on the record.

also telephoned her husband, who was a minister at a nearby church. Mr. Howell returned to his home and Standing Soldier informed him that he had killed a man. BIA police officers arrived at the Howell residence in response to the telephone call. After Standing Soldier told them that he had killed two men, they placed him in their patrol car and drove to Red Cloud's trailer. The officers went into the trailer and observed Tootoo lying unconscious on a cot. A later examination revealed that Tootoo had suffered no injuries but had apparently passed out as a result of his intoxication. Red Cloud was found lying on the floor in a pool of blood with a hammer protruding from his head.

Standing Soldier and Tootoo were placed in custody at the Pine Ridge BIA office. At approximately 5:00 p.m., FBI agents Ron Williams and William Clifford arrived at the BIA office after being assigned to investigate the alleged assault. They proceeded to interview Standing Soldier, who was given his *Miranda* rights [2] and executed a form acknowledgment. During the interview which followed, Standing Soldier stated to the agents that an argument had erupted into a fight between Tootoo and Red Cloud; that Red Cloud then came at him with something in his hand, hitting and kicking him; that Standing Soldier grabbed the hammer and used it to defend himself; that Red Cloud fell, whereupon Standing Soldier ran to the Howell residence for medical assistance. Following the March 26th interview, the FBI agents returned to their lodging in Rushville, Nebraska. A blizzard closed the roads and stranded the agents in Rushville until March 29, 1975, and apparently blocked their return to Pine Ridge until April 2d.

Later in the evening of March 26th, Standing Soldier sent a note to BIA Police Captain Gerald Hill, asking for a further interview. Since the agents were unavailable, Hill first telephoned Agent Williams and, on his instructions, interviewed Standing Soldier after first advising him of his *Miranda* rights. Hill knew very little of the facts of the case and therefore obtained from Standing Soldier a statement in narrative form, which Hill transcribed and Standing Soldier then read and signed. A typed version of the statement was read and signed by Standing Soldier on March 27th, after he was again advised of his rights.

On April 2, 1975, Agent Williams returned for another interview. Standing Soldier was reminded that he still had the same rights that he was advised of on March 26th, and that he still had the right to remain silent and the right to an attorney. Standing Soldier then related a substantially different version of the events of March 26th, in which he stated that after he had first struck Red Cloud and had begun to walk away he saw Red Cloud move on the floor of the trailer and went over to Red Cloud and hit him two more times until he thought he was dead.

## I. ADMISSION OF THE STATEMENTS

### A. *Miranda* Violations

At trial, the appellant disputed that proper warnings were given prior to the two statements made on March 26th. On appeal, he basically abandons that contention since it is clear from the record that proper warnings were given and waivers were secured prior to those statements. He focuses instead upon the April 2d statement and contends that proper warnings were not given nor a valid waiver secured prior to that statement.

The District Court [3] held that the April 2d statement was admissible. In so doing, it stated:

With respect to the * * * statements, the Court finds that the Miranda warnings were given, that the defendant

---

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. The Honorable William O. Mehrtens, Senior Judge, United States District Court for the Southern District of Florida, sitting by designation.

knowingly and intelligently waived his privilege against self-incrimination, that the defendant voluntarily, knowingly and intelligently waived his right to have retained or appointed counsel present at any interrogation or statement made by him, and that the confession or statements were freely and voluntarily made. The Court further finds that although it does specifically find that all the requirements of Miranda were met with and that although the particular statements where he was not reread the Miranda statements, he was asked whether he was aware of and knew what the contents of the Miranda warnings were and he acknowledged that he did know and therefore he waived at that point any further formal giving of the statements at that time. The Court will hold therefore that the various statements are admissible in evidence.

While the record is clear, and the government concedes, that the appellant was not given the full *Miranda* warnings immediately prior to the April 2d statement, the lack of such warnings did not render that statement inadmissible. *Miranda* warnings are required only when statements are taken from a defendant in a "custodial interrogation". 384 U.S. at 444, 86 S.Ct. at 1612. The Court explained the term "custodial interrogation":

> By custodial interrogation, we mean questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. (emphasis added)

*Id.* The Court later commented that:

> There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today. (footnote omitted)

*Id.* at 478, 86 S.Ct. at 1630. Thus, statements which stem from interviews initiated by a defendant need not be preceded by the warnings required in *Miranda*. *See Holloway v. United States*, 495 F.2d 835, 838 (10th Cir. 1974); *Massie v. Virginia*, 348 F.Supp. 160, 162–63 (W.D.Va.1972). *See also People v. Tomita*, 260 Cal.App.2d 88, 66 Cal.Rptr. 739, 741 (1968).

■ The April 2d interview, delayed because of the blizzard, was in response to Standing Soldier's written request to Captain Hill in which he stated that he wanted to talk to an FBI agent or the officer in charge to clarify some statements he had made earlier and to clear Marvin Tootoo of any involvement in the incident. Captain Hill called FBI Agent Williams who told Hill that he was unable to come to Pine Ridge due to the blizzard, but that Hill should take the appellant's statement if he was willing to give one and that he would come down to Pine Ridge as soon as he could. Captain Hill, after giving the appellant proper *Miranda* warnings, listened to and transcribed the appellant's statement. From the record, it appears that it was not until April 2d that road conditions were such that the agents could return to Pine Ridge to talk to the appellant pursuant to his request of March 26th. Upon their return, Agent Williams interviewed the appellant and he gave the third statement.

Appellant contends that the interview by Captain Hill on the evening of the 26th terminated his request to talk to the FBI since he was interviewed at that time. He contends that he did not renew his request subsequent to the interview with Hill and therefore the April 2d interview was not made at his request. We disagree.

■ We find nothing in the record to indicate that Standing Soldier had withdrawn his request to make a statement to the FBI agents or that the statements made on April 2d were not volunteered by Standing Soldier. There is no suggestion that the delay caused by the blizzard operated in any coercive manner as a result of the appellant's incarceration to produce the

statement which he had consistently sought to make.[4] The option to remain silent and to have an attorney, the critical safeguards to offset the coercive pressures of a custodial setting, *see Michigan v. Mosley*, 423 U.S. 96, 103–05, 96 S.Ct. 321, 326–27, 46 L.Ed.2d 313 (1975), were again explained to him. Under these circumstances, additional *Miranda* warnings were not required.[5]

### B. Impermissible Delay

The appellant contends that the government had probable cause to arrest him on March 26th, that the delay in not presenting him to a magistrate until April 4th was unnecessary, and that the April 2d statement was thus inadmissible under *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943), and *Mallory v. United States*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957). The District Court found "that under all of the facts and circumstances * * * there was not any unreasonable delay in bringing [the defendant] to formal arraignment before a U.S. Magistrate upon the charges which he now faces."

For purposes of evaluating a claim of impermissible delay of presentment before a magistrate, we look to the point in time at which the government had probable cause to arrest a defendant then in custody in order to measure the length of the delay. *See United States v. Keeble*, 459 F.2d 757, 759 (8th Cir. 1972), *rev'd on other grounds*, 412 U.S. 205, 93 S.Ct. 1993, 36 L.Ed.2d 844 (1973). We doubt that the FBI agents had probable cause to arrest the appellant on March 26th. His statements on that day did not establish that he was culpable of any criminal activities since he asserted a plausible story of self-defense, and the agents had not yet interviewed Tootoo or Red Cloud. It was not until April 2d that the appellant divulged that he had used excessive force and had exceeded the scope of any right to use self-defense, thereby supplying probable cause to arrest on the federal offense. The relevant period of delay was thus from April 2d, after the statement, until April 4th, when he was presented to a magistrate. No statements were made during this period. Even if we were to assume that the federal authorities had probable cause to arrest the appellant on March 26th, the delay which resulted was caused by the blizzard and poor road conditions, and the April 2d statement was thus not inadmissible because of unnecessary delay in presentment before a magistrate.[6]

---

**4.** BIA investigator Nathan Merrick was present during the April 2d interview. He testified in part as follows:

> Mr. Standing Soldier said that he wanted to tell us what really happened that day and that he had not told us the complete story on the 26th or told the investigators the complete story on the 26th and he wanted to tell what really happened.
> * * * * * *
> [I]t wasn't actually a lot of questions. Standing Soldier was furnishing the information to us and he was more or less relating what happened.

**5.** Even if our reliance upon Standing Soldier's request to make a statement is misplaced, the complete *Miranda* warnings previously given on March 26th and 27th should have sufficed to fortify Standing Soldier with an awareness of his rights. While *Miranda* warnings, once given, cannot be accorded unlimited efficacy or perpetuity, *United States v. Hopkins*, 433 F.2d 1041, 1045 (5th Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971),

in the situation where an interrogation is renewed after an interruption, "the ultimate question is: Did the defendant, with a full knowledge of his legal rights, knowingly and intentionally relinquish them?" *Miller v. United States*, 396 F.2d 492, 496 (8th Cir. 1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969). *See also Evans v. Swenson*, 455 F.2d 291, 296–97 (8th Cir.), *cert. denied*, 408 U.S. 929, 92 S.Ct. 2508, 33 L.Ed.2d 342 (1972). The District Court found that the appellant was aware of his rights prior to this April 2d interview and that he knowingly waived those rights. Our review of the record convinces us that this conclusion is fully supported by the evidence in this case.

**6.** Because we agree with the District Court that there was no unnecessary delay in the presentment of the appellant before a magistrate, we do not reach the questions of whether 18 U.S.C. § 3501 "overrules" the *McNabb-Mallory* rule and, if so, whether 18 U.S.C. § 3501 is constitutional.

### C. Voluntariness of the April 2d Statement

■ The appellant contends that the District Court erred in finding the April 2d statement to have been voluntary within the meaning of 18 U.S.C. § 3501(b). That section provides:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

> The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

Our review of the record convinces us that the District Court's conclusion that the April 2d statement was voluntarily made, as reflected in its order denying the motion to suppress,[7] exhibited consideration of these factors, was not clearly erroneous, and should be affirmed.

Evidence of the three statements made by appellant was thus properly admitted into evidence by the District Court.

### II. THE NOTE

On the evening of March 26th, the jailer, Virgil Plenty Bulls, gave Captain Hill a note allegedly written by the appellant, stating that he wanted to talk. Apparently, the note was lost by tribal or federal authorities, but Captain Hill produced a typewritten copy at trial from which he testified. Appellant contends that this testimony was prejudicial error in that the note was not properly authenticated or identified and that use of a copy of the note, instead of the note itself, violated the best evidence rule. We disagree.

### A. Authentication and Identification

■ The District Court permitted testimony concerning the note after Captain Hill testified that he had compared the signature on the note with that of appellant on the signed statement that he had made and found them to be the same. Appellant contends that this comparison was inadequate for purposes of authentication and identification in that Captain Hill was not familiar with his signature.

Under Fed.R.Evid. 901(b)(2), a writing can be authenticated by "[n]onexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for the purposes of litigation." The general rule is that:

> [A]nyone familiar with the handwriting of a given person may supply authenticating testimony in the form of his opinion that a writing or signature is in the handwriting of that person. Adequate familiarity may be present if the witness has seen the person write, or if he has seen writings *purporting* to be those of *the person in question under circumstances indicating their genuineness.* (emphasis original; footnotes omitted)

E. Cleary, McCormick's Handbook of the Law of Evidence § 221, at 547 (2d ed. 1972). Because the signature on the prior signed statement was clearly made in circumstances indicating its genuineness, Captain Hill possessed an adequate familiarity with appellant's signature to authenticate the note. The weight to be given to such testimony was for the jury.

---

7. *See* p. 200, *supra.*

### B. Best Evidence Rule

■ Appellant contends that testimony concerning the copy of the note should not have been permitted since there was no adequate showing that the original was not available. Captain Hill, however, testified that he had attempted to locate the original note by contacting the criminal investigator and the FBI, but had been unable to find it, although he thought that it probably did still exist. The District Court, satisfied with this explanation, admitted the testimony based upon secondary evidence.

Fed.R.Evid. 1004(1) provides that the "original is not required, and other evidence of the contents of a writing * * * is admissible if * * * [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith." There being no evidence of bad faith on the part of the government and the original having been lost, the District Court properly permitted Captain Hill's oral testimony concerning the note.[8]

### III. INSTRUCTIONS

### A. Voluntariness

■ The District Court's instruction on the voluntariness of appellant's statements was as follows:

The Court instructs you that it has found that the statement made by the defendant at the time of his arrest was voluntary, and based upon that Court's finding, the Government witnesses were permitted to testify as to certain statements which the defendant was alleged to have made.

However, it is for the jury to determine the creditability [sic] and weight to be given to such statements with respect to the defendant's innocence or guilt.

Appellant contends that this instruction, given over his objection, constituted reversible error because it informed the jury that the court had determined the confessions to be voluntary and this effectively precluded

jury consideration of the voluntariness issue since the jury would give deference to the court's decision. He cites several cases which indicate approval of instructions which did not inform the jury of the court's determination on voluntariness. *See United States v. Harper,* 432 F.2d 100, 102 (5th Cir. 1970); *Kristiansand v. United States,* 384 F.2d 301, 302 (5th Cir. 1967); *United States v. Inman,* 352 F.2d 954, 956 (4th Cir. 1965).

■ This Court has recently held that the giving of this instruction constitutes error because it "operates to limit the factual inquiry of the jury contrary to the statutory command of 18 U.S.C. § 3501(a)." *United States v. Bear Killer,* 534 F.2d 1253, at 1258 (8th Cir. 1976). That section provides:

In any criminal prosecution brought by the United States or by the District of Columbia, a confession, as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

The instruction makes "impossible, as a general rule, the fulfillment of the jury's duty to give the statements such weight as they deserve under all of the circumstances." *Id.* at 1258. The deference which a jury normally extends to a court may in a given case effectively preclude proper consideration of the weight to be accorded to the confession, a consideration which 18 U.S.C. § 3501(a) mandates. Viewed in the totality of the circumstances, however, and considering the instructions as a whole, we

---

**8.** The Federal Rules of Evidence recognize no "degrees" of secondary evidence and thus there was no requirement that the copy be introduced in preference to the oral testimony. *See* Fed.R.Evid. 1004, Notes of Advisory Committee.

are satisfied beyond reasonable doubt that the instruction did not infect the trial with prejudicial error.[9] The instructions, taken as a whole, clearly permitted the jury to determine the weight to be accorded the statements.[10]

### B. Defendant's Credibility

■ The District Court instructed the jury as follows:

A defendant who wishes to testify is a competent witness and his testimony should be judged in the same way as that of any other witness.

In determining the degree of credibility that should be accorded by you to the defendant's testimony, you are entitled to take into consideration the fact that he is the defendant and the personal interest that he has in the result of your verdict.

The appellant contends that this instruction constituted prejudicial error. This type of instruction has indeed been criticized by this Court. *See United States v. Bear Killer, supra,* at 1260; *United States v. Brown,* 453 F.2d 101, 107 (8th Cir. 1971), *cert. denied,* 405 U.S. 978, 92 S.Ct. 1205, 31 L.Ed.2d 253 (1972); *Taylor v. United States,* 390 F.2d 278, 284–85 (8th Cir.), *cert. denied,* 393 U.S. 869, 89 S.Ct. 155, 21 L.Ed.2d 137 (1968). *See also United States v. Long,* 449 F.2d 288, 298–99 (8th Cir. 1971), *cert. denied,* 405 U.S. 974, 92 S.Ct. 1206, 31 L.Ed.2d 247 (1972).

We reiterate our preference that a "defendant not be singled out", *Taylor v. United States, supra,* 390 F.2d at 285, especially in a case where much depends upon the defendant's credibility. In this case, appellant's confession and medical testimony indicating the clear use of excessive force was very strong evidence of guilt and did not

leave the claim of self-defense even a close issue. We are therefore persuaded beyond reasonable doubt that the use of this instruction was not prejudicial error.

## IV. OTHER CLAIMS

### A. Sufficiency of the Evidence

■ Appellant contends that there was insufficient evidence to support a finding that he was not acting in self-defense. We disagree.

The government introduced the testimony of Doctor Edward James who testified as to the extensive nature of Red Cloud's head injuries, which included three separate skull fractures. This testimony is indicative of the use of excessive force by appellant and of the fact that his actions exceeded the scope of any right of self-defense he may have had.[11] The jury could find from appellant's April 2d statement that he went back and hit Red Cloud as he lay on the floor, conduct which was clearly inconsistent with the claim of self-defense. Viewing the evidence in the light most favorable to the government, we conclude that the evidence was sufficient, indeed substantial, to support appellant's conviction.

### B. Presentence Report

■ At the time of the sentencing in this case, the 1975 amendment to Fed.R. Crim.P. 32(c) had not yet taken effect, and thus appellant's claim that the District Court was obligated to explain its reasons for not ordering such a report without an explanation on the record is without merit. Also, the District Court's failure to order a report was not an abuse of discretion under prior Rule 32(c).

9. Our direction in *United States v. Bear Killer,* 534 F.2d 1253, at 1259 (8th Cir. 1976), that the instruction " is not to be given in the future" is not applicable here.

10. Appellant also contends that the District Court erred in not giving his requested instructions concerning the circumstances bearing on the voluntariness of the confessions, including the fact that the appellant was intoxicated during the statements and the contention that the

*Miranda* warnings were not given. The instruction as given complied with 18 U.S.C. § 3501(a) in that the jury was instructed to "determine the credibility and weight to be given" to the statements; the court was not required to specifically instruct the jury as to each circumstance.

11. This medical evidence also provided the necessary corroboration for appellant's confession.

The judgment of conviction is accordingly affirmed.